Hon. Darrell W. Harp Assistant Commissioner New York State Department of Transportion
I am writing in response to your request for an opinion as to the legal aspects of the ability of New York State to carry out or assist funding a project to construct a man-made island in the New York Harbor region beyond three miles from the shore.
In 1983, the State Legislature authorized an expenditure of $100,000 "[f]or a feasibility study of the ICONN-Erie project" (L 1983, ch 54, p 901). Briefly stated, ICONN-Erie refers to a plan to redredge the Erie Canal, making it capable of handling larger vessels and using either the dredged spoil or other sources to construct a man-made island in New York Harbor. The island would be used for various industrial projects: coal, oil and gas storage; fossil fuel power plants; and various waste disposal facilities (ICONN is an acronym for island complex off-shore New York and New Jersey).
The Department of Transportation was given administrative responsibility for the feasibility study. New York University's Graduate School of Public Administration in association with Parsons, Brinckerhoff, Quade and Douglas was selected to perform the study. An advisory committee was established to oversee the work of the consultant. The committee's duties include: definitions of project specifics; review of interim reports and analysis; providing study direction and preparing final recommendations to the Governor.
During the course of the committee's meetings, the question arose as to whether the State has jurisdiction to participate in the construction of an artificial island that is located nineteen miles from shore. Unlike situations involving extradition and reciprocity agreements, no sister-state jurisdiction exists over the subject area.
Like all coastal states, New York has a three mile offshore limit. That is, its jurisdiction over the high seas extends over an area bounded by a line three miles distant from the shoreline (State Law, § 7-a). With regard to jurisdiction over the sea floor, the coastal states also have jurisdiction out to this three mile limit (U.S. v Florida, 425 U.S. 791
[1976]). For purposes of offshore natural resources, the United States Supreme Court has held that states are entitled to the resources for a distance of three miles from the shore, and the Federal government is entitled to the resources for a distance beyond that, to the edge of the Continental Shelf (ibid.).
The proposed island, being nineteen miles offshore, falls under this area of Federal jurisdiction. 43 U.S.C. § 1333(a) (1) provides, in relevant part that:
 "[t]he constitution and laws and civil and political jurisdiction of the United States are extended to the subsoil and seabed of the outer Continental Shelf and to all artificial islands, and all installations and other devices permanently or temporarily attached to the seabed * * *"
43 U.S.C. § 1333 also provides that the laws of the adjacent state shall apply to these offshore areas:
 "To the extent that they are applicable and not inconsistent with this subchapter or with other Federal laws and regulations of the Secretary [of Interior] now in effect or hereafter adopted, the civil and criminal laws of each adjacent State, now in effect or hereafter adopted, amended or repealed are declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf * * *" (43 U.S.C. § 1333[a][2][A]; see Rodrigue v Aetna Casualty Surety Co., 395 US
This provision, however, does not grant New York jurisdiction over these areas, but only involves the use of New York laws if not inconsistent with Federal law and regulations in the administering of Federal jurisdiction.
In addition to this Federal assertion of jurisdiction over the outer Continental Shelf, the law of New York State also provides for State jurisdiction over these areas. Section 7-a of the State Law provides that New York's jurisdiction extends to
 "[t]he high seas to whatever extent jurisdiction therein may be claimed by the United States of America, or to whatever extent may be recognized by the usages and customs of international law or by any agreement, international or otherwise, to which the United States of America or this state may be party * * * [and]
 [a]ll submerged lands, including the subsurface thereof, lying under said aforementioned water." (State Law, § 7-a[1].)
This provision, in effect, grants New York jurisdiction over those submerged lands that lie beneath the high seas that are under jurisdiction of the United States. The apparent purpose of the law was to ensure that in the event the three mile offshore limit was increased, New York would retain jurisdiction over the high seas to the full extent of any expansion (L 1958, ch 648, Bill Jacket, Joint Legislative Committee on Interstate Cooperation, Memorandum to Accompany Bill). Although this section grants jurisdiction over submerged lands dependent on the Federal off-short limit, because the offshore limit remains at three miles, the grant is no more extensive than that of the common law three mile limit.
If the island were to be built nineteen miles offshore as planned, it would be beyond those areas of the high seas and seabed to which New York has a jurisdictional claim. Actual construction of the island, then would be subject to Federal law and regulation. If the State were to desire to participate in such an island's construction, the necessary approvals would have to come from the Federal government.
Although the proposed island would be beyond the State's geographical jurisdiction, this is not to say that the State may not be involved in its construction. The Legislature's spending power, as described in the State Constitution and the State Finance Law, is not limited to projects within the State's geographical boundaries (NY Const, Art VII; State Finance Law, §§ 40-53). If the Legislature determined that expenditure of funds on a project beyond the three mile limit would serve a legitimate purpose, it could do so.
We conclude that an artificial island to be constructed nineteen miles offshore would be outside the geographical jurisdiction of New York State. This would not preclude, however, subject to obtaining necessary Federal approvals, the expenditure of State funds on such a project because there are no provisions in the State Constitution or the State Finance Law prohibiting expenditure of State funds for projects outside the geographical boundaries of New York.